UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K.D.,<br><br>    Plaintiff<br><br>V.<br><br>HARVARD PILGRIM HEALTH CARE, INC., HARVARD PILGRIM – LAHEY HEALTH SELECT HMO, AND LAHEY CLINIC FOUNDATION, INC.,<br><br>    Defendants | CIVIL ACTION NO. |

**COMPLAINT**

INTRODUCTION

1. Plaintiff, K.D. brings this action against the Defendants, Harvard Pilgrim Health Care, Inc. ("HPHC"), Harvard Pilgrim – Lahey Health Select HMO ("the Plan"), and Lahey Clinic Foundation, Inc. ("Lahey") (collectively referred to as "Defendants") for violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq. ("ERISA") and the Mental Health Parity and Addiction Equity Act, 29 U.S.C. §1185(a) enforced through 29 U.S.C. § 1132(a)(3) ("MHPAEA"). K.D. was a beneficiary of an ERISA welfare benefit plan administered by Defendant HPHC and insured by Defendant Lahey.

2. Plaintiff challenges Defendants': 1) unreasonable and unlawful denial of K.D.'s claim for residential mental health treatment benefits despite substantial medical evidence

demonstrating K.D.'s entitlement to said benefits; 2) pattern of rejecting and/or ignoring the substantial evidence supporting K.D.'s entitlement to coverage; 3) failure to provide K.D. with a full and fair review of her claim; 4) failure to provide a reasonable claims procedure that would yield a decision on the merits of K.D.'s claim; and (5) provision of lesser coverage for in-network inpatient mental health treatment as compared to analogous in-network inpatient medical or surgical treatment in violation of Federal parity law.

## JURISDICTION

3. This Court has personal and subject matter jurisdiction over this case under 29 U.S.C. § 1132(e) and (f), without regard to jurisdictional amount or diversity of citizenship, in that the Defendants' breach of its ERISA obligations took place in this district.

## PARTIES

4. The Plaintiff, K.D., resides in Middlesex County, Massachusetts. At the time of the treatment, which is the subject of this Complaint, K.D. was a participant in the Plan, within the meaning of 29 U.S.C. § 1002(2)(7). Plaintiff has standing to bring this action under 29 U.S.C. § 1132(a).

5. The Defendant, Harvard Pilgrim Health Care, Inc., is a not-for-profit corporation, with its principal place of business at 93 Worcester Street, Wellesley, Massachusetts, 02481. HPHC was responsible for administering claims under the Plan and making decisions regarding Plan participants' eligibility for benefits.

6. The Defendant, Harvard Pilgrim – Lahey Health Select HMO, is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. §1002(1).

7. The defendant, Lahey Clinic Foundation, Inc., is a not-for-profit corporation, with its

principal place of business at 41 Burlington Mall Road, Burlington, MA 01805. Lahey is responsible for insuring claims made under the Plan.

8. At all times relevant to the claims asserted in this Complaint, HPHC and Lahey purported to act as ERISA claim fiduciaries with respect to participants of the Plan generally, and specifically with respect to K.D., within the meaning of ERISA.

## FACTS

**The Plan.**

9. As a dependent of a Lahey employee, K.D. was entitled to health insurance coverage under the Plan.

10. The Plan provides coverage for out-of-network treatment when the services are not available in-network, as follows:

    Covered Benefits from a provider who is not a Plan Provider will be covered if one of the following exceptions applies:

    1) The service was received in a Medical Emergency…

    2) The service was received while you were outside of the Service Area and coverage is available under (1) the benefit for temporary travel or (2) the benefit for Dependents living outside the Enrollment Area when an Out-of-Are Dependent Provider is not available to provide care…

    3) No Plan Provider has the professional expertise needed to provide the required service. In this case, services by a Non-Plan Provider must be authorized in advance by us, unless one of the exceptions above applies.

11. For K.D.'s residential mental health treatment to be a covered benefit under the Plan, it must be Medically Necessary, defined in the Plan as:

    Those health care services that are consistent with generally accepted principles of professional medical practice as determined by whether: (a) the service is the most appropriate supply or level of service for the Member's condition, considering the potential benefit and harm to the individual; (b) the service is

known to be effective, based on scientific evidence, professional standards and expert opinion, in improving health outcomes; and, (c) for services and interventions that are not widely used, the use of the service for the Member's condition is based on scientific evidence.

12. To determine whether requested mental health treatment is Medically Necessary, HPHC applies the Optum/United Behavioral Health Level of Care Guidelines: Mental Health Disorders.

**K.D.'s claim for residential mental health treatment.**

13. On November 1, 2018, K.D. was admitted to Sierra Tucson for residential mental health treatment.

14. On November 1, 2018, HPHC denied K.D.'s claim for residential mental health treatment at Sierra Tucson based on a finding "there are services available in network from the providers listed who work with members who have similar issues", listing only "Walden" as a suitable in-network provider.

15. On June 3, 2019, K.D. timely appealed HPHC's denial submitting three treatment narratives and her complete medical records from six providers.

16. On June 4, 2019, K.D. requested the opportunity to respond to any medical reviews conducted on appeal prior to HPHC's conclusion of the internal appeals process.

17. On July 9, 2019, HPHC provided K.D. a copy of a medical review conducted on her appeal, with the opportunity to review and respond prior to HPHC's appeal determination.

18. On September 12, 2019, K.D. responded to the medical review, submitting an independent medical review from Sarah Lowenthal, M.D. and affidavit from her parents who made facility coverage inquiries to HPHC prior to K.D.'s admission to Sierra Tucson.

19. Two business days later, on September 16, 2019, HPHC upheld its denial, again asserting that K.D. "could have safely and effectively treated at Walden Behavioral."

20. On September 24, 2019, HPHC informed K.D.'s counsel there was "no thorough review" of the documents K.D. submitted on September 12, 2019.

21. On September 27, 2019, K.D.'s counsel requested K.D.'s claim file and a written explanation of HPHC's statement there was "no thorough review" of the documents K.D. submitted in response to HPHC's peer reviews.

22. On October 29, 2019, HPHC disputed its previous statement regarding "no thorough review", stating instead that "these documents were reviewed internally by both Harvard Pilgrim and Optum" but offered to accommodate K.D.'s request for review by its peer reviewer.

23. On February 7, 2020, K.D. again requested HPHC's reviewer consider the documents she first submitted on September 12, 2019, namely, Dr. Lowenthal's independent medical review and parental affidavit.

24. On February 17, 2020, after reviewing the additional documents, HPHC's reviewer concluded not only that Walden was an appropriate placement, but raised– for the first time -- that K.D. could have been treated in a less restrictive setting, such as a partial hospitalization program.

25. Prior to this, HPHC never disputed the Medical Necessity of K.D.'s treatment at the residential level of care.

26. Neither HPHC nor any of the medical review opinions HPHC relied on addressed the substance of Dr. Lowenthal's independent medical review, submitted by K.D. during the appeals process, which contradicted HPHC's physician reviewers' conclusions.

27. None of the physician reviewers HPHC relied on to deny benefits examined K.D.

28. On information and belief, HPHC's denial of benefits was based on inaccurate information generated regarding K.D.'s treatment needs, clinical history, and Walden's available in-network treatment programs.

29. On information and belief, HPHC maintains inadequate provider networks for mental health treatment.

30. On information and belief, HPHC maintains inaccurate information on available in-network mental health treatment programs.

31. During the internal appeals process, K.D. requested information from HPHC regarding its compliance with MHPAEA.

32. In response to K.D.'s request, HPHC did not provide information regarding network adequacy as compared between mental health and medical surgical benefits.

33. On December 19, 2019, the Commonwealth of Massachusetts, through the Office of the Attorney General ("AGO"), HPHC, and HPHC's behavioral health administrator Optum, agreed to enter into an Assurance of Discontinuance ("AOD") as a result of the AGO's investigation into HPHC's compliance with MHPAEA, including matters of network adequacy and accurateness.

34. As part of the AOD, HPHC agreed to make extensive changes to its provider directories to increase in-network access to mental health treatment and maintain accurate in-network provider information available to consumers.

35. HPHC's failure to maintain an accurate and adequate provider network to treat mental health conditions resulted in an unreasonable benefits determination that, on or about November 1, 2018, Walden was as an appropriate treatment provider for K.D.

36. During the appeals process, K.D. submitted information from her medical records, treatment providers, and an independent expert invalidating HPHC's recommended in-network Walden program, designed primarily to treat eating disorders, where K.D.'s primary issues were major depression, anxiety, and complex pain.

37. On information and belief, on or about November 1, 2018, K.D. had access to more than one in-network provider for medical or surgical treatment at a skilled nursing facility, a level of care comparable to mental health residential treatment.

38. K.D. exhausted the internal appeals process provided by HPHC prior to filing suit.

**Summary of Defendants' Review of K.D.'s Claim.**

39. K.D. has exhausted her administrative remedies pursuant to 29 C.F.R. 2560.503-1(1).

40. K.D.'s eligibility for benefits is based on the substantial evidence in Defendants' possession.

41. The Defendants failed to respond to K.D.'s attempts to engage in a meaningful dialogue regarding the evaluation of her claim.

42. Any discretion to which the Defendants may claim they are entitled under the Plan is negated by their failure to provide K.D. with explanations as to their adverse actions as proscribed by ERISA and its implementing regulations.

43. The Defendants failed to meet the minimum requirements for the denial of K.D.'s benefits, in violation of ERISA, 29 U.S.C. 1133, which requires that upon a denial of benefits, the administrative review procedure must include adequate notice in writing setting forth the specific reasons for the denial of benefits and a reasonable opportunity for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

44. The Defendants have also failed to meet the Plan requirements for review of claims that have been denied.

45. The Defendants failed to provide K.D. with a full and fair review of her claim for benefits.

46. On appeal, HPHC's physician reviewer made no attempt to respond to or engage with K.D.'s treating providers' detailed treatment narratives addressing the inappropriateness of the in-network Walden program.

47. Prior to making its final decision, HPHC did not provide its physician reviewer with the independent medical review K.D. submitted on appeal.

48. The decision to deny K.D.'s benefits was self-serving, wrongful, unreasonable, irrational, solely contrary to the evidence, contrary to the terms of the Plan and contrary to law.

49. Due to the unlawful denials of benefits under ERISA, K.D. suffered significant financial loss.

50. Having exhausted the administrative procedures provided by the Defendants, K.D. now brings this action.

**FIRST CAUSE OF ACTION**
**(Enforcement of Terms of Plan**
**Action for Unpaid Benefits)**
**(ALL DEFENDANTS)**

51. K.D. realleges each of the paragraphs above as if fully set forth herein.

52. The Plan is a contract.

53. K.D. performed all of her obligations under the contract.

54. In particular, K.D. met all of the conditions for the payment of health insurance benefits under Plan, including but not limited to, providing Defendants proof the requested treatment services are a covered benefit pursuant to the terms of her insurance contract.

Nonetheless, Defendants have failed to provide K.D. with the health insurance benefits she is due under the terms of the Plan.

55. 29 U.S.C. § 1132(a)(1)(B) states that:

   A civil action may be brought ---

   1.   by a participant or beneficiary –

       1.   for the relief provided for in subsection (c) of this section, or

       2.   to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

56. The Defendants' actions constitute an unlawful denial of benefits under ERISA, as provided in 29 U.S.C. § 1132(a)(1)(B).

57. The Defendants unlawfully denied K.D.'s benefits in part by failing to provide K.D. with a full and fair review of its decision to deny coverage for her claim for residential mental health treatment.

58. In accordance with 29 U.S.C. §1132, K.D. is entitled to coverage for the medical care she received under the Plan based upon the unavailability of this Medically Necessary treatment in-network.

59. The Defendants refused to provide K.D. with coverage for the covered medical services received, and are, therefore, in breach of the terms of the Plan and ERISA, which requires that the Defendants engage in a full and fair review of all claims and the administration of the Plan in the best interests of the Plan participants.

60. As a direct and proximate result of this breach, K.D. lost the principal and the use of the funds expended to pay for the cost of K.D.'s treatment, which should have been paid by Defendants.

61. K.D. is entitled to the Massachusetts twelve percent statutory rate of interest due to the loss of the use of the funds expended to pay for K.D.'s Medically Necessary treatment at Sierra Tucson.

## SECOND CAUSE OF ACTION
### (Attorney's Fees and Costs)
### (ALL DEFENDANTS)

62. K.D. realleges each of the paragraphs above as if fully set forth herein.

63. Under the standards applicable to ERISA, K.D. deserves to recover "a reasonable attorney's fee and costs of the action" herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

64. Defendants have the ability to satisfy the award.

65. K.D.'s conduct of this action is in the interests of all participants who subscribe to the Plan, and the relief granted hereunder will benefit all such participants.

66. The Defendants have acted in bad faith in denying K.D.'s health insurance benefits under the terms of the respective Plan.

67. The award of attorney's fees against the Defendant will deter others acting under similar circumstances.

## THIRD CAUSE OF ACTION
### (Violation of MHPAEA)
### (ALL DEFENDANTS)

68. K.D. realleges each of the paragraphs above as if fully set forth herein.

69. At all times herein, MHPAEA was in effect for the Plan.

70. MHPAEA mandates group health plans and health insurance issuers provide parity in coverage between medical or surgical benefits and mental health benefits.

71. Defendants violated MHPAEA by providing inaccurate and lesser in-network mental health benefits as compared to its provider network for medical/surgical benefits.

72. The actions of the Defendants, as outlined above, have caused damage to K.D. in the form of denial of payment for mental health treatment based on inadequate and inaccurate in-network benefits, in violation of MHPAEA.

73. Because of this damage, leading to an arbitrary and uninformed adverse benefits decision, Defendants are responsible to pay K.D.'s benefit under the terms of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, K.D., requests this Court to:

(1)　Enter judgment for K.D. against Defendants;

(2)　Declare, adjudge, and decree that Defendants are obligated to pay K.D. for her treatment at Sierra Tucson;

(3)　Order that the Defendants make restitution to K.D. in the amount of all losses sustained by K.D. as a result of the wrongful conduct alleged herein, together with prejudgment interest;

(6)　Award twelve percent interest, costs, and attorneys' fees to K.D.; and

(7)　Award such other relief as this Court deems just and proper .

Date:  October 30, 2020	Respectfully submitted,

	K.D.
	By her attorney,


	/s/ Sarah E. Burns
	Sarah E. Burns
	BBO No. 676074
	ROSENFELD & RAFIK
	184 High Street, Suite 503
	Boston, MA 02110
	T: 617-723-7470
	F: 617-227-2843
	E:  seb@rosenfeld.com