UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| K.D.,<br><br>  Plaintiff,<br><br>v.<br><br>HARVARD PILGRIM HEALTH CARE, INC.,<br>HARVARD PILGRIM – LAHEY HEALTH<br>SELECT HMO, AND LAHEY CLINIC<br>FOUNDATION, INC.,<br><br>  Defendants. | CIVIL ACTION<br>NO. 20-11964-DPW |

MEMORANDUM AND ORDER
March 27, 2023

K.D. brought a challenge to the decision of Harvard Pilgrim Health Care, Inc. to deny her claim for out-of-network benefits under the Harvard Pilgrim – Lahey Health Select HMO. On December 12, 2022, I:

(a) remanded K.D.'s benefits claim "so that all relevant issues and provider opinions [may] be considered properly";

(b) determined that she was eligible for certain attorney's fees; and

(c) directed her to submit a supported motion for attorney's fees and costs. *K.D.* v. *Harvard Pilgrim Health Care, Inc.*, No. 20-11964-DPW, 2022 WL 17586091, at *16 (D. Mass. Dec. 12, 2022). Her submissions and Defendants' opposition regarding attorney's fees and costs are now before me.

Familiarity with my December 12, 2022 Memorandum framing the question of attorney's fees and costs is assumed and that discussion will not be repeated in full in this Memorandum.

## I. STANDARD OF REVIEW

In litigation under the Employee Retirement Income Security Act ("ERISA"), I "may award fees whenever a party has showed 'some degree of success on the merits.'"  *Doe* v. *Harvard Pilgrim Health Care, Inc.*, 974 F.3d 69, 75 (1st Cir. 2020) (quoting *Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010)); *see* 29 U.S.C. § 1132(g)(1) ("In any action under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.").  Although the Supreme Court in *Hardt* did not decide whether remand is sufficient to satisfy the requirement of success, *see* 560 U.S. at 256, the First Circuit has expressed its view that the "position" is "persuasive," *Gross* v. *Sun Life Assur. Co. of Can.* (*Gross II*), 763 F.3d 73, 78 (1st Cir. 2014).  As have certain of my colleagues on this Court, I determined that remand in this matter was sufficient to establish K.D.'s eligibility for attorney's fees.  *See K.D.*, 2022 WL 17586091, at *14; *see also MacNaughton* v. *Paul Revere Life Ins. Co.*, No. 4:19-40016-TSH, 2022 WL 17253701, at *2 (D. Mass. Nov. 28, 2022) (Hillman, J.) ("[T]here is a soft presumption that a remand to a claims administrator justifies attorney's fees.");[1] *Cannon* v. *Aetna*

---

[1] I note that after remand the defendants again denied the plaintiff's claim and Judge Hillman, under an arbitrary and capricious state of review, finding that substantial evidence supported the defendants' second denial, last week granted summary judgment on the merits to the defendants.  *MacNaughton* v. *Paul Revere Life Ins. Co.*, No. 4:19-40016-TSH, 2023 WL 2601624 (D. Mass. Mar. 22, 2023).

2

*Life Ins. Co.*, No. 12–10512–DJC, 2014 WL 5487703, at *3 (D. Mass. May 28, 2014) (Casper, J.) ("remand provided a meaningful benefit").[2]

Previously, I concluded that *eligibility* for fees will not, on its own, establish a party's *entitlement* to fees. *See Hatfield* v. *Blue Cross & Blue Shield of Mass., Inc.*, 162 F. Supp. 3d 24, 44 (D. Mass. 2016). To determine "whether an award is appropriate," courts in the First Circuit weigh the five factors[3] set forth in *Cottrill* v. *Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir. 1996), *abrogated on other grounds by Hardt*, 560 U.S. at 253–54. *Gross II*, 763 F.3d at 82–83. I weighed those factors in this matter, *see K.D.*, 2022 WL 17586091, at *15–16, and held an award to K.D. to be appropriate under these circumstances.

To determine the reasonable fee award under § 1132(g)(1), "a lodestar time and rate method is preferred." *McGahey* v. *Harvard Univ. Flexible Benefits Plan*, 685 F. Supp. 2d 181, 184 (D. Mass. 2010); *see Cent. Pension Fund of the*

---

[2] I note that following remand, Judge Casper granted summary judgment on the remand record by a November 23, 2015 Memorandum and Order. On December 21, 2015, the parties filed mutual waivers of appeal and the Defendant specifically "agreed to waive its right to petition the Court for an award of attorney's fees and costs." [Dkt. No. 114]

[3] Those five factors are:
> (1) the degree of culpability or bad faith attributable to the losing party; (2) the depth of the losing party's pocket, i.e., his or her capacity to pay an award; (3) the extent (if at all) to which such an award would deter other persons acting under similar circumstances; (4) the benefit (if any) that the successful suit confers on plan participants or beneficiaries generally; and (5) the relative merit of the parties' positions.

*Cottrill* v. *Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 225 (1st Cir. 1996), *abrogated on other grounds by Hardt* v. *Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253–54 (2010).

*Int'l Union of Operating Eng'rs & Participating Emps.* v. *Ray Haluch Gravel Co.*, 745 F.3d 1, 5 (1st Cir. 2014) ("The calculation of shifted attorneys' fees generally requires courts to follow the familiar lodestar approach.").[4] To calculate the "reasonable fee" I must "multiply[] the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera* v. *O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008).

The burden of "support[ing] both the time and rate components rests with the party seeking the award," and requires the submission of "supporting documentation" such as "counsel's contemporaneous time and billing records and information establishing the usual and customary rates in the marketplace for comparably credentialed counsel." *Spooner* v. *EEN, Inc.*, 644 F.3d 62, 68 (1st Cir. 2011).

## II. ANALYSIS

### A.  *Timing of the Fee Award*

As a threshold matter, Defendants contend that an award of fees prior to resolution of remand[5] and ultimate determination of K.D.'s benefits is

---

[4] A number of fee shifting statutes utilize the lodestar method to calculate reasonable fees. *See Spooner* v. *EEN, Inc.*, 644 F.3d 62, 67 n.3 (1st Cir. 2011). "The case law under these statutes is, insofar as it pertains to constructing and applying the lodestar, generally interchangeable." *Id.*

[5] In the period since I ordered, on December 12, 2022, remand for Defendants to conduct an appropriate administrative review process, Defendants requested that K.D. formally initiate such process on February 1, 2023, because they required at least thirty days to schedule for the new reviewers. On January 26, 2023, Defendants identified Erin Hussey, an Assistant General Counsel of Point32Health, as their point of contact for the remand process. As of March 1, 2023, the parties reported that Defendants requested an extension of the remand claim response date to April 15, 2023 to accommodate the availability

4

inappropriate.  Arguing that because K.D.'s claim centers upon "whether under the Plan K.D. is entitled to payment for the care she received from Sierra Tucson, LLC," Defendants contend that "the value of the Court's remand order . . . has not yet been determined and, thus, the Court should defer an award of fees until after remand."  K.D. opposes this contention, noting that "postpon[ing] an award of fees undercuts the First Circuit's acknowledgment in *Gross* [*II*] that interim fees serve an important purpose in ERISA cases."

Defendants' contention is at odds with the First Circuit's reasoning in *Gross II*.  *See* 763 F.3d at 81–82.  There, the First Circuit explained that an ERISA fee award "bespeaks a need for prompt resolution."  *Id.* at 82.  Although an award of fees prior to completion of remand "could result in piecemeal fees litigation," in ERISA matters that can take many years to conclude, claimants "may face difficulty both securing counsel initially and retaining counsel as proceedings move forward."  *Id.*  Awarding fees as the litigation progresses may encourage "better access to skilled counsel for ERISA claimants."  *Id.*  In light of this First Circuit guidance, I will award fees at this stage.

**B.     *Calculating the Reasonable Fee Award***

The lodestar calculation is a two-step process.  *See Pérez-Sosa* v. *Garland*, 22 F.4th 312, 321 (1st Cir. 2022) (describing lodestar calculation in employment retaliation case).  I first "calculate the number of hours reasonably expended by the attorneys . . . excluding those hours that are 'excessive,

---

of Molly Mayerson, K.D.'s therapist, so that she could complete a peer-to-peer review.

redundant, or otherwise unnecessary.'" *Cent. Pension Fund*, 745 F.3d at 5 (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 434 (1983)). "The second step entails a determination of a reasonable hourly rate or rates—a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence." *Id.* I may then "adjust the lodestar itself, upwards or downwards, based on any of several different factors, including the results obtained and the time and labor actually required for the efficacious handling of the matter." *Torres-Rivera*, 524 F.3d at 336.[6]

K.D. requests $81,047.00 in attorney's fees and $400.00 in costs, which she contends represents a reasonable fee for her services, reduced to remove duplicitous work and to reflect only the hours expended on claims as to which she was successful. Defendants dispute the quantum of K.D.'s fee request generally, suggesting that I further reduce the award to reflect her limited success of remand.

---

[6] The First Circuit has recognized that other factors influencing fee awards, as described by the Supreme Court, are:
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz* v. *Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley* v. *Eckerhart*, 461 U.S. 424, 430 n. 3 (1983)).

1.    Reasonable Hours

K.D. requests fees for a total of 167.70[7] hours for the work of three individuals at Rosenfeld & Rafik, P.C. ("Rosenfeld & Rafik") supported by contemporaneous billing records.  She requests 113.90 hours for Ms. Rafik, 25.60 hours for Ms. Burns, and 28.20 hours for Ms. MacKenzie.  K.D. submits that she expended a total of 268.70[8] hours but reduced that number by removing hours that reflect "duplication of efforts" and "unproductive" work.  Specifically, K.D. has limited time billed for communications with the client and opposing counsel, and completely removed billing from members of the firm other than Ms. Rafik, Ms. Burns, and Ms. MacKenzie.  In addition, K.D. did not submit billing entries for time spent on "unproductive" work — namely, her response to Defendants' second motion to strike, which I granted, *see K.D.*, 2022 WL 17586091, at, *16, and work related to her Parity Act claim, which I denied at summary judgment, *id.* at *13–14.  Defendants do not contest the content of K.D.'s billing entries nor the number of hours requested.

I have reviewed K.D.'s entries and find that her billing is reasonable.[9] First, K.D.'s billing does not reveal "signs" of overstaffing.  *Gay Officers Action*

---

[7] This figure represents the number of hours requested in K.D.'s memorandum in support of her motion for attorney's fees, plus the additional 5.70 hours requested for fees expended to draft her reply.

[8] This figure represents the 7.30 total hours expended on the reply brief, plus the total number of hours expended on the litigation, 261.40.

[9] Defendants do not contest K.D.'s fees on the basis that certain activities constituted "'non-core' legal work, such as telephone conversations, letter writing, and scheduling." *Holt* v. *Raytheon Techs. Corp.*, No. 20-11244-FDS, 2022 WL 6819544, at *2 (D. Mass. Oct. 11, 2022) (Saylor, C.J.).  I recognize, of course, that "[w]hile the core/non-core distinction may be a useful tool for fashioning a reasonable fee in some cases, the choice of whether to employ that

*League* v. *Puerto Rico*, 247 F.3d 288, 297 (1st Cir. 2001).  Although both Ms. Rafik and Ms. Burns worked on K.D.'s matter, "the mere fact that more than one lawyer toils on the same general task does not necessarily constitute excessive staffing."  *Id.*  In fact, K.D. has carefully tailored her requested fees to excise repetitive entries and has only asked for the fees of certain individuals.

Second, K.D. has requested fees solely for the claims and aspects of the litigation as to which she was successful, albeit on an interlocutory basis.  In this context, I will consider the degree of disallowance appropriate.  *See Torres-Rivera*, 524 F.3d at 336 (explaining that "the court may disallow time spent in litigating failed claims").  She has not requested an award for the time spent developing and litigating her Parity Act claim, nor has she included the time spent on Defendants' second motion to strike.  K.D.'s time spent on Defendants' third motion to strike is properly included, although I granted Defendants' motion.  This is because K.D.'s time in this regard is attributable to Defendants' obdurate litigation conduct, which necessarily required K.D. to pursue contentions on which she was unsuccessful to secure contentions on which she achieved success.

K.D.'s records do reflect something approximating block billing.  *See EEOC* v. *AutoZone, Inc.*, 934 F. Supp. 2d 342, 354 (D. Mass. 2013) ("'Block billing' is an industry term used to describe 'the time-keeping method by which

---

distinction is within the sound discretion of the district court." *Matalon* v. *Hynnes*, 806 F.3d 627, 639 (1st Cir. 2015).  I decline to do so here because of the artificiality of the distinction and the lack of robust evidentiary basis in this dispute.

an attorney lumps together the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" (quoting *Conservation Law Found., Inc.* v. *Patrick*, 767 F. Supp. 2d 244, 253 (D. Mass. 2011)).  For example, one entry for 1.30 hours includes the following description: "Review additions to administrative record; email opposing counsel regarding remaining issues with the administrative record; conference call with counsel regarding the record; review Smith v. Jefferson Pilot regarding the a/c privilege."

Though a "global penalty" may be appropriate where block billing is rampant and consistent, if it "is infrequent or relatively minor, or where most of the entries were reasonably recorded," no such penalty is required.  *In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 176 (D. Mass. 2015).  Some of K.D.'s entries do include more than one task, but the descriptions "contain[] the necessary keys to testing [the fee request's] reasonableness."  *Brewster* v. *Dukakis*, 786 F.2d 16, 19 (1st Cir. 1986); *see Muehe* v. *City of Boston*, 569 F. Supp. 3d 80, 85–86 (D. Mass. 2021).  In this instance, K.D.'s "block billing," if it may fairly be described as such, did not interfere with my task of determining whether K.D.'s requested fees are reasonable.  *See Muehe*, 569 F. Supp. 3d at 85-86.  I will not reduce her fees on this basis.

    2.    <u>Hourly Rates</u>

When determining "the applicable hourly rate" I "look to 'the prevailing market rates in the relevant community,'" *United States* v. *One Star Class Sloop Sailboat built in 1930 with hull no. 721, named "Flash II"*, 546 F.3d 26, 40

(1st Cir. 2008) (quoting *Blum* v. *Stenson*, 465 U.S. 886, 895 (1984)), and consider "a constellation of factors, including the rate that the particular attorney actually charges to clients . . . and data evidencing the prevailing market rate for counsel of comparable skill," *Pérez-Sosa*, 22 F.4th at 325 (citation and quotations omitted). Ultimately, I "have wide discretion in selecting fair and reasonable hourly rates for attorney time." *Pérez-Sosa*, 22 F.4th at 326.

K.D. requests an hourly rate of $600 for Ms. Rafik, an attorney with 25 years of experience, $350 for Ms. Burns, an attorney with 12 years of experience[10], and $135 for Ms. MacKenzie, a paralegal. [Dkt. Nos. 68 at 10; 69] Defendants do not contest K.D.'s requested hourly rates. I nevertheless will independently address the applicable hourly rates here.

      a.    *Ms. Rafik's Hourly Rate*

Ms. Rafik has twenty-four years of ERISA-specific litigation experience. I observe that some fifteen months ago, in December 2021, Judge Saris awarded Ms. Rafik a discounted hourly rate of $550, which Ms. Rafik reports she specifically requested in that case "to narrow the matters in dispute before the court." *See Est. of Paul Nelson Chambers* v. *Blue Cross & Blue Shield of Mass., Inc.*, No. 20-10492-PBS (D. Mass. Dec. 14, 2021).

K.D. directs my attention to attorney Jonathan Feigenbaum as comparable counsel to Ms. Rafik. In 2018, Mr. Feigenbaum received fees at a

---

[10] Ms. Burns is a 2009 law school graduate; her work on the matter now before me ceased in 2021 when she had 12 years of experience.

rate of $500 per hour. *See Gross* v. *Sun Life Assurance Co. of Can.* (*Gross III*), 880 F.3d 1, 23 (1st Cir. 2018). More recently, Mr. Feigenbaum requested a rate of $800 per hour in a Worcester-based ERISA litigation. *See MacNaughton*, 2022 WL 17253701, at *3 (lowering requested rate of $800 per hour to "a local Worcester rate" of $600 per hour). In 2022, Mr. Feigenbaum received $700 per hour for his "about 27 years" of experience in a Boston-based ERISA litigation. *See Holt* v. *Raytheon Techs. Corp.*, No. 20-11244-FDS, 2022 WL 6819544, at *4 (D. Mass. Oct. 11, 2022).

I find Ms. Rafik's requested rate of $600 per hour to be reasonable. It is a rate that is less than Mr. Feigenbaum's Boston rate — which reflects slightly fewer years of experience — and is supported by an affidavit that outlines her career of experience with ERISA.

      b.     *Ms. Burns's Hourly Rate*

K.D. requests a rate of $350 per hour for Ms. Burns, an attorney with 12 years of health-related litigation experience when she left Rosenfeld & Rafik in 2021.

In 2021, Judge Saris applied a rate of $300 per hour in *Chambers* to Ms. Burns's work. *See Est. of Paul Nelson Chambers*, slip op. at 7 n.1. Although Ms. Burns requested a discounted rate in *Chambers*, I see no compelling reason to apply a higher rate for Ms. Burns's work in the matter now before me, given that her level of experience was essentially the same in both circumstances and the affidavit filed before me does not provide significant

justificatory detail as to Ms. Burns's specific qualifications. Accordingly, I will apply as reasonable a rate of $300 per hour to Ms. Burns's work.

### c. Ms. MacKenzie's Hourly Rate

K.D. requests $135 per hour for the work of Ms. MacKenzie, a paralegal, but has submitted minimal information regarding her years of experience or relevant qualifications. Ms. MacKenzie is reported, conclusorily, to "focus[] her practice on health care claims and is in charge of the firm's health care practice."

Although rates for paralegals in this District vary, in recent years the median rate has remained in the ballpark of $95 to $125 per hour. *See Sullivan* v. *Experian Info. Sols.*, No. 16-11719-MPK, 2022 WL 392848, at *10 (D. Mass. Feb. 9, 2022) (Kelley, C. Mag. J.) ($125 per hour in, *inter alia*, Fair Credit Reporting Act matter); *Cano* v. *Saul*, 505 F. Supp. 3d 20, 30–31 (D. Mass. 2020) ($95 per hour for paralegal with "advanced degrees" and "more than 25 years of experience" in social security matter (citation omitted)); *Riley* v. *Mass. Dep't of State Police*, No. 15-14137, 2019 WL 4973956, at *2 (D. Mass. Oct. 8, 2019) (Casper, J.) (reducing paralegal rate from $175 to $125 per hour in Title VII matter). There is nevertheless a broad range significantly higher than this median for paralegal rates. *See Rosie D.* v. *Baker*, No. 01-30199-RGS, 2022 WL 847410, at *4 n.2 (D. Mass. Mar. 22, 2022) (Sterns, J.) ($220 per hour in Medicaid Act matter); *United States ex rel. Herman* v. *Coloplast Corp.*, No. 11-CV-12131-RWZ, 2021 WL 3036922, at *3 (D. Mass. July 19, 2021) (Zobel, J.)

($140 per hour for paralegal with more than 30 years of experience in False Claims Act matter).

As is the case when establishing a reasonable hourly rate for attorneys, K.D. is obligated to supply support for her requested rate for a paralegal or risk reduction. *See Lincoln-Sudbury Reg'l Sch. Dist.* v. *W.*, No. 16-10724-FDS, 2018 WL 2023517, at *6 (D. Mass. May 1, 2018) (Saylor, J.) (reducing paralegal rate from $110 to $90 per hour). K.D. has supplied little justificatory information, making quite challenging the task of drawing comparisons between reasonable rates in District of Massachusetts case law, "where complexity of other cases may have differed, the hourly rate may not have been contested and . . . [I am] not sure what factual support other courts may have been provided to support the reasonableness of the rates charged." *Riley*, 2019 WL 4973956, at *2.

Without more to support her requested fee, I find that a reduction in the hourly rate for Ms. MacKenzie to $110 per hour is appropriate. Based on the limited information provided to me from K.D., and cognizant of the limited value rates applied in other unrelated matters in this District can provide, I find this rate for Ms. MacKenzie to be appropriate and reasonable.

3. Adjustments to the Lodestar

I now consider whether to "adjust the potential award based on factors not captured in the lodestar calculation." *Matalon* v. *Hynnes*, 806 F.3d 627, 638 (1st Cir. 2015). In doing so, as is pertinent here, I may "take[] into account the quality of the results that the plaintiff obtained," by "look[ing] to a combination of the plaintiff's claim-by-claim success, the relief achieved, and

the societal importance of the rights vindicated." *De Jesús Nazario* v. *Morris Rodríguez*, 554 F.3d 196, 207 (1st Cir. 2009) (describing lodestar calculation in 42 U.S.C. § 1988 matter).

Defendants contend that K.D.'s award should be reduced to "reflect the limited scope of K.D.'s success" but do not provide a formula for such reduction. For her part, K.D. contends that the full attorney's fees she requests here are reasonable and particularly warranted to incentivize ERISA attorneys generally to take on difficult, or perhaps less lucrative, cases and to deter Defendants specifically from similar conduct in the future.

### a. Reduction in Fees for K.D's Limited Success

Defendants' pursuit of a downward adjustment from the lodestar value, on the basis that K.D. has only achieved remand at this stage, is at this phase of evaluation unduly harsh. K.D.'s complaint, Defendants argue, centered upon an action for unpaid benefits; accordingly, because K.D. has yet to recoup such benefits and "build a record that would satisfy her burden," she has not they say had the success she set out to achieve and her fee award should be reduced.[11] Defendants also urge me to reduce the lodestar based on K.D.'s arguments in briefing that did not bear fruit.

---

[11] For her part, K.D. relies on *Gross* v. *Sun Life Assurance Company of Canada* (*Gross II*), 763 F.3d 73 (1st Cir. 2014) and *Hardt* v. *Reliance Standard Life Insurance Company*, 560 U.S. 242 (2010) to rebut Defendants contentions and assert that only "some success on the merits" is required for full fees. In this regard, her reliance on the case law is out of focus. *Gross II* and *Hardt* address the standard for fee eligibility, not the quantum of fees available to the eligible party. *See Gross II*, 763 F.3d at 85–86 (explaining that a party "may not be denied a fee award based solely on the fact that she did not have greater success," but remanding "[t]he heavily fact-dependent lodestar analysis" to the

14

Defendants are correct that K.D. throughout the litigation fashioned this claim as an "Enforcement of Terms of Plan Action for Unpaid Benefits" and did not meet her end goal by establishing entitlement to payment of benefits at this stage and on this administrative record.  In fact, during the December 7, 2022 hearing, while acknowledging that remand would be "a win," Ms. Rafik also offered the grudging reservation and ironic observation that "in this situation . . . it's almost rewarding [Defendants for achieving remand, despite] what happened" during the initial administrative process.  In the sense that K.D. actively advocated against the remand remedy provided, it can be said that she has had "only partial success in the first round of litigation," perhaps warranting some downward departure from the lodestar.  *Gross III*, 880 F.3d at 25 (affirming district court's reduction of lodestar because "[plaintiff] had not at that point established a right to benefits, and [the First Circuit] rejected one of her primary contentions").

However, as K.D. notes, in her Complaint she also requested that I "[a]ward such other relief as . . . deem[ed] just and proper."  That language "easily incorporates" the remand I ordered and it cannot be said that K.D.'s success in that regard, though perhaps limited, was insignificant.  *Cf. Colby* v. *Assurant Emp. Benefits*, 635 F. Supp. 2d 88, 96 (D. Mass. 2009).  It is not unusual — nor at all surprising — that K.D. would form her Complaint and

---

district court and noting that "[n]umerous factors . . . 'may support upward or downward adjustments from a lodestar'" (quoting *Diaz* v. *Jiten Hotel Mgmt., Inc.*, 741 F.3d 170, 173 n. 2 (1st Cir. 2013))).

argument primarily as a request for full benefits while secondarily asking for remand.

On balance, the "results obtained" is "a preeminent consideration in the fee-adjustment process." *Joyce* v. *Town of Dennis*, 720 F.3d 12, 27 (1st Cir. 2013) (quoting *Coutin* v. *Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 (1st Cir. 1997)). The "results obtained" may "refer to a plaintiff's success claim by claim, or to the relief actually achieved, or to the societal importance of the right which has been vindicated, or to all of these measures in combination." *Coutin*, 124 F.3d at 338 (describing relevant factors in § 1988 fees litigation). K.D.'s result at that stage must be viewed within the context of ERISA benefits litigation, where "a remand for a second look at the merits of her benefits application is often the best outcome that a claimant can reasonably hope to achieve from the courts." *Gross II*, 763 F.3d at 78. The circumstances here, where I have ordered remand and K.D. may still obtain full benefits, warrant no reduction to the lodestar.[12]

One important factor in my determination not to reduce the lodestar is Defendants' scorched earth approach to this litigation. Although K.D.'s "memorandum in support of judgment included some off-the-mark arguments," *Gross III*, 880 F.3d at 25, (such as her claim that HPHC

---

[12] Should K.D. prevail on remand, she may be entitled to additional fees. *See Peterson* v. *Cont'l Cas. Co.*, 282 F.3d 112, 122 (2d Cir. 2002) ("Where the administrative proceedings are ordered by the district court and where that court retains jurisdiction over the action during the pendency of the administrative proceedings, we hold that ERISA authorizes the award of associated costs."); *cf. Rote* v. *Titan Tire Corp.*, 611 F.3d 960, 965–66 (8th Cir. 2010) (per curiam).

16

improperly "relied upon three separate reports from Dr. Sharma"), "it consisted for the most part of ordinary advocacy for her view of the record," *id.* That each and every argument made in support of K.D.'s claim was not meritorious does not detract away from her remand success and the measured reductions that she carefully presented in her request.

### b.     Full Fees to Incentivize and Deter

K.D. contends that general factors sounding in balance of advantage support full award of the tailored fees request she has made. Full fees, under these circumstance, she suggests, would incentivize plaintiff's counsel to take on clients who, through no fault of their own, face defendants who might be incentivized to create an under-developed record during the internal appeals process. Such plaintiffs "are in desperate situations," and are forced to the difficult choice whether to pay their treatment expenses out of pocket, which may cost less than pursuing their claim over an extended time does in federal court. I wrote in *Hatfield* v. *Blue Cross and Blue Shield of Massachusetts, Inc.*, 162 F. Supp. 3d 24 (D. Mass. 2016)[13], which K.D. echoes in her fee Memorandum now before me, to explain the potential that certain plan

---

[13] This case, like the *Hatfield* v. *Blue Cross and Blue Shield of Massachusetts, Inc.* matter, is generally centered upon the availability of out-of-network benefits for mental health treatment. *See* 162 F. Supp. 3d 24, 32-33, 37–38 (D. Mass. 2016). As Defendants note, Blue Cross and Blue Shield of Massachusetts served as the claims fiduciary in *Hatfield*; HPHC served as the claims fiduciary in *K.D.* [Dkt. No. 71 at 8] In both circumstances, however, Lahey Clinic Foundation, Inc. served as the Plan sponsor, [*id.* at 8–9], and Defendants acknowledge that in that role, "Lahey Clinic Foundation, Inc. does select and contract with a third-party administrator for the Plan, may have a hand in the plan design, and is ultimately responsible for paying claims under the Plan."

administrators and related entities may take advantage of ERISA litigants by forcing them to seek out-of-network treatment for mental health conditions due to a deficiency of in-network facilities, and then fail to engage meaningfully in the ERISA appeals and review process, thereby foreclosing compensation for such treatment without the added expense of filing a complaint in federal court.  [Dkt. Nos. 68 at 13–15; 74 at 5; *see also* Dkt. No. 63 at 30–31 (Dec. 7, 2022 Hr'g Tr.)]  Full reasonable interim fees, K.D. contends, could deter this conduct.

The First Circuit has acknowledged the challenges ERISA litigants confront when bringing claims for unpaid benefits.  *See Gross II*, 763 F.3d at 82 ("Without some prospect of compensating their attorneys along the way, ERISA litigants may face difficulty both securing counsel initially and retaining counsel as proceedings move forward."); *see also Hanley* v. *Kodak Ret. Income Plan*, 663 F. Supp. 2d 216, 219 (W.D.N.Y. 2009) ("The purpose of fee-shifting provisions . . . is to promote the interests of Plan beneficiaries in recovering their benefits, and also to encourage attorneys to take on such cases, which are often time consuming and complex."); *supra* Section II.A.  Though not entirely analogous, the similar deficiencies in the claims processing presented in both this case and in *Hatfield* warrant "a soul-searching discussion" for Defendants, as I suggested during the December 7, 2022 hearing.  ERISA claimants, such as K.D., face substantial hurdles when bringing a claim for benefits; those that represent the Plan and related entities should not be rewarded for making pursuit of such a claim even more challenging.

18

      *c.*    *Conclusion*

K.D. has raised significant concerns regarding the policies and practices of these Defendants, as well as broader concerns regarding the structure of ERISA litigation that, in some ways, incentivizes such policies and practices. As I indicated during the December 7, 2022 hearing, I recognize the seriousness of these concerns. Nothing in K.D.'s limited success of remand in the matter now before me counsels against the full award of the tailored fee request she has made that I have already slightly reduced by lowering Ms. Burns's and Ms. MacKenzie's hourly rates. A further reduction of K.D.'s hours would be inappropriate under these circumstances. K.D. has not yet achieved full benefits, but the remand she has achieved is a significant marker of merit. *Cf. Gross II*, 763 F.3d at 78 ("[R]emand to the claims administrator . . . ordinarily will reflect the court's judgment that the plaintiff's claim is sufficiently meritorious that it must be reevaluated fairly and fully.").

    4.    Calculation of the Lodestar

I now turn to the arithmetic of calculating the lodestar. Assessing 113.90 hours for Ms. Rafik at $600 per hour, 25.60 hours for Ms. Burns at $300 per hour, 28.20 hours for Ms. MacKenzie at $110 per hour, I calculate the compensable 150.90 hours to justify award of attorney's fees for a total of **$79,122**.

**C.**    ***Costs***

K.D. requests $400 in costs for the filing of her Complaint. *See* 29 U.S.C. § 1132(g)(1). [Dkt. Nos. 68 at 12; 68-9] Defendants do not contest

K.D.'s costs and I find the request to be reasonable. I will award K.D. **$400** in costs.

### IV. CONCLUSION

For the reasons set forth above, I GRANT K.D.'s motion [Dkt. No. 67] for attorney's fees and costs and Defendants are ORDERED to pay to K.D. attorney's fees in the amount of $79,122 and costs in the amount of $400.00. The Defendants shall make this payment to the Plaintiff forthwith.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE